IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERRALD HANDY, | Civil Action No. 12-1091 |
| Plaintiff, | Magistrate Judge Cynthia Reed Eddy |
| v. | |
| UNIT MANAGER AMY VARNER; DR. MOLLURA; LORI KWISNEK, | |
| Defendants | |

MEMORANDUM OPINION

On January 7, 2013, Dr. Mollura's ("Mollura" or "Defendant") filed a Motion to Dismiss [ECF No. 17] the Eighth Amendment claims made against him pursuant to 42 U.S.C. § 1983, by pro se Plaintiff, Derrald Handy ("Handy" or "Plaintiff") in a Complaint filed October 18, 2012. [ECF No. 6]. In the brief supporting his Motion to Dismiss [ECF No. 18], Mollura argued that Handy's Complaint should be dismissed for failure to exhaust administrative remedies, or, in the alternative, for failure to state a claim. In an Order dated January 8, 2012, the Court notified the parties that Mollura's Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6) would be treated as a Motion for Summary Judgment under Fed. R. Civ. P. 56 for purposes of analyzing the issue of Plaintiff's exhaustion of administrative remedies. The same Order directed that the remaining Defendants, Amy Varner ("Varner") and Lori Kwisnek ("Kwisnek") file a Motion for Summary Judgment likewise limited to the issue of exhaustion. The Court considers here the Motion to Dismiss/Motion for Summary Judgment filed on behalf of Mollura [ECF No.17], and the remaining Defendants' Motion for Summary Judgment on the issue of exhaustion [ECF No.

23].[1] It will grant Mollura's Motion to Dismiss without prejudice, and will deny the remaining Defendants' Motion for Summary Judgment.

**Facts**

Handy alleges that during his incarceration at the State Correctional Institution at Greensburg ("SCI-Greensburg") during June 2011, he was moved by Varner, his unit manager, from a cell on D Block to a dormitory constructed under the D block in order to relieve overcrowding at the facility. [ECF No.1-1 at ¶1]. This move was made over Handy's protestations based on his "extensive medical needs"[2] and the fact that the dormitory area had repeatedly failed state inspections. He states that there was no ventilation, that the windows would not open, that the area was contaminated with dust, mold, and mildew. He claims that his medical problems were exacerbated by these conditions, causing him to suffer ear, eye, nose, throat and chest infections. [Id. at ¶2]. Dormitory staff told Handy that they were not authorized to move him, and that he "would have to go back through the person who moved him down there." [Id. at ¶3]. Handy then sought assistance from the hospital administration staff, including Mollura. They, too, told Handy that he would have see the unit manager who had made the decision to move him. [Id.].

Handy submitted multiple requests to prison staff that he be moved, and was eventually told by the dormitory block officer that Handy would be "written up for [harassing] staff for his excessive request slips to them asking to be moved . . . ." [Id.]. He was told that "he would be

---

[1] In responding to the Motion for Summary Judgment filed by Varner and Kwisnek, Handy failed to file a Counter Statement of Facts, and did not specifically dispute Defendants' statement of facts with requisite citations to the record. Because Handy did not comply with this court's local rule LCvR 56(c), the factual averments in Defendants' Concise Statement of Fact are deemed admitted. This does not, however, alter the Court's analysis or its disposition of the Motion.

[2] Handy asserts that he suffered from allergies, frequent nosebleeds, runny and itchy eyes, chronic sinusitis, and sarcoidosis. [ECF No. 1-1 at ¶ 2].

2

given a negative [parole] recommendation if he continued to pursue these attempts to get moved back to his old block." [Id.]. Consequently, Handy "continued to obey the orders that [were] given to [him] and the staff continued to cause him undue and harsh harm by making [him] stay in a living area that was not fit for living quarters!!" [Id.]. According to Handy, he "continued to go to medical and the problems continued to pile up, to the point where all [his] meds where [sic] heavy doses of antibiotics and heavy doses of steroids, assisted by antihistamines and vitamin supplements (steroid pills, steroid eyedrops, steroid asthma inhalers, antibiotic nasal sprays, steroid nasal sprays, antibiotic pills, antibioticeyedrops [sic], [and] anti biotic eardrops [sic].)" Id. [Id.]. Although he was placed on "all kinds of meds trying to stop this widespread infection from getting worse," he believed that the only solution to his issues was to be moved out of the dormitory area. [Id.]

Handy was denied parole in August 2010. When this happened, Handy told Mollura that he was checking himself into administrative custody, refusing to continue to take the ineffectual medications, planning to call the state police, and would contact the Superintendent until he was moved. Handy asserts that, at that point, Mollura wanted to conduct a more thorough examination, send Plaintiff for medical consults, and to have his name to be taken off of any complaints in which he was named. The doctor also wanted to increase Handy's medications in order to slow the progress of the infections, but Handy told him that it would make no difference until he was moved from the dormitory area. Mollura then promised to have Handy moved. [Id.]. The next morning, Plaintiff was moved to a space with windows. Handy writes: "Now that I have been moved the medications are starting to work better, but the damage is done!! I have sarcoidosis, asthma, atrial fibulation (heart condition), chronic sinusitis, sarcoinds [sic] of

the eyes, and have contracted conjunctivitis of the entire [mucous] cavity, a condition that along with my chronic sinusitis will continue to reinfect and get worse. [Id.].

Handy next asserts that he "is still suffering these medical problems months after the fact!! They keep returning because they have never been properly treated and taken care of!! I am still taking all the ranges of meds that I was taking before, and they are really having minimal effect on the underlining [sic] conditions." [Id. at ¶4]. Finally, with respect to his medical treatment, Handy contends that he is "still suffering medical effects and conditions from the period of time [he] was in the dorms!! And this is an impact on the rest of [his] life!! Cruel and unusual punishment!! Medical malpractice and negligence, harassment, threats and intiminations [sic] from staff! And blatant disreguard [sic] of the law!! [Id. at ¶6].

Plaintiff asks this Court to hold the hospital administration – presumably including Dr. Mollura – responsible for failing to exercise authority over security to have him moved for medical reasons, and choosing instead to "flood the body with meds instead of solving the problem at the time it was at its worse [sic] and they diagnosed it as such." [Id. at p. 5 ¶¶ 1-2].

On January 7, 2013, Mollura filed a Motion raising first Handy's failure to exhaust administrative remedies. This portion of the Motion to Dismiss was converted to a Motion for Summary Judgment. The section 1983 claims were not part of this conversion. Hence, the Court analyzes these issues separately, under different standards.

**Standard of Review**

Summary Judgment

Summary Judgment is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for

4

the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986), the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Matsushita, 475 U.S. at 586-87 (1986) (emphasis in original removed).

In evaluating the evidence, the Court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See id. at 249. When examining the record to see if there are genuine issues of material fact, the Court's focus is on issue finding, not on issue resolution.

Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has instructed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

In evaluating a motion to dismiss, the Court must accept as true all well-pleaded facts and allegations and draw all reasonable inferences therefrom in favor of Plaintiffs. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Twombly, 550 U.S. at 555. The "factual allegations must be enough to raise a right to relief above the speculative level." Id. The Supreme Court clarified this requirement when it stated that "only a complaint that states a plausible claim for relief survives

5

a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). The showing required to overcome a motion to dismiss must establish "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "This 'plausibility' analysis is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679)).

After Iqbal, the United States Court of Appeals for the Third Circuit directed that district courts conduct a three pronged analysis to determine the sufficiency of a complaint. First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth" Id. Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Id.

This standard is less stringent when a court considers pro se pleadings. This does not, however, mean that pro se litigants are relieved of the obligation to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir.2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## DISCUSSION

**Plaintiff's Failure to Exhaust Administrative Remedies**

6

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983, charging that Defendants, including Mollura, violated the Eighth Amendment ban on cruel and unusual punishments by failing to have him moved from a cell in the dormitory located under D block at SCI-Greensburg in which his health was negatively affected by the lack of ventilation and the presence of a number of allergens. The record shows, and Plaintiff admits that he failed to exhaust administrative remedies with respect to these claims.[3] Defendants argue that this failure to exhaust is grounds for dismissal of this matter under a provision of the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-73, as amended, 42 U.S.C. § 1997e(a) (1994 ed. Supp.V), which provides: "No action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." See Porter v. Nussle, 534 U.S. 516, 520 (2002)." "This exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Id. "All 'available' remedies must now be exhausted; these remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. at 524 (quoting Booth v. Churner, 532 U.S. 731, 739; 740 at n.5 2001). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 741). Failure to exhaust is not, however, a basis for sua sponte dismissal of a prisoner's complaint; it is an affirmative defense to be raised by a defendant and responded to by the plaintiff. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).

"Exhaustion must be 'proper exhaustion,' meaning that the prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies

---

[3] The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1 as the "Consolidated Inmate Grievance Review System." See Wallace v. Doe, No. 12-3926, 2013 WL 363484 at * 2 (3d Cir. 2013).

7

'available.'" Wallace v. Doe, No. 12-3926, 2013 WL 363484 at *2 (3d Cir. January 31, 2013) (quoting Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007)). The "availability" of administrative remedies is a question of law. See Mitchell, 318 F.3d at 529 (quoting Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002)). "[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e (a) . . . ." Id. (citing Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)). For example, in Mitchell, where the prisoner argued that he failed to file a grievance because prison officials refused to provide him with the necessary forms, his failure did not result in procedural default of his claim because "he lacked 'available' remedies." 318 F.3d at 529 (citing Miller, 247 F.3d at 740).

In his Complaint, Handy obliquely addresses the exhaustion requirement, stating that he repeatedly requested that he be moved out of the dormitory, and that medical policy trumped all other jail policies. [ECF No. 1-1 at 3]. He also states that he was told by the block officers that if he continued to complain about his location, he would be written up for misconduct, which would negatively affect his soon to be reviewed parole status. [Id.]. Handy expands upon this argument in his Response [ECF No. 20] to Mollura's Motion to Dismiss:

> [I] did not file any grievances or complaints [about this issue] at the institutional level because at that time I was awaiting a reparole consideration from the jail and the parole board[.] I was told by my block officer who instructed me to move to the dorms under orders from Varner when I later asked for his assistance, he told me that I should not make a big issue of this at this time because they are doing my evaluations and reviews for parole considerations and they would write me up for harassing the staff. This was a recommendation [sic] that I was trying to get for parole and I did not want any bad reports all of a sudden popping up on my record that would prevent me from going home . . . To file complaints against the staff that is writing your reports and recommendations is freedom suicide!! And that was the threat that held me at bay from filing my complaints at that time.. [sic]. These very one and the same staff members that sent me to the dorms from the start are

8

>  the very same ones who knew I was coming up for reparole reviews and considerations . . . .

[Id].

Although the United States Court of Appeals for the Third Circuit has "never addressed in a precedential opinion whether threats of retaliation excuse exhaustion," Barger v. Walton, No 08-3459, 2009 WL 738756 at *2 (3d Cir. March 23, 2009), other courts of appeals have done so. In Tuckel v. Grover, 660 F.3d 1249, 1252 (10th Cir. 2011), for example, the United States Court of Appeals for the Tenth Circuit joined "three of [its] sibling circuits in concluding that intimidation or threats by prison officials can render an administrative remedy unavailable under the PLRA's exhaustion provision." The Court in Tuckel noted that its "circuit colleagues have adopted somewhat differing standards with respect to the showing a plaintiff must make to establish that remedies are unavailable." Id. at 1253. The Court of Appeals for the Second Circuit determined that the test "must be an objective one." Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). A similar test was implicitly adopted by the United States Court of Appeals for the Seventh Circuit in Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The United States Court of Appeals for the Eleventh Circuit, in contrast, has relied on a two pronged analysis under which a court must first make an objective inquiry, and next "determine if the plaintiff was subjectively deterred." Tuckel, 660 F.3d at 1254 (citing Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008)).

The United States Court of Appeals for the Tenth Circuit in Tuckel adopted the approach articulated by the Court in Turner, finding that in order to invoke intimidation as a factor rendering administrative remedies unavailable, "an inmate must make two showings: (1) that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance . . . ; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and

9

fortitude from lodging a grievance . . . ." Tuckel, 660 F.3d at 1254. The Court explained that the first part of the test is subjective, meaning that the inmate must show that he was actually deterred. The second is objective in the sense that it requires the court to "consider the context of the alleged threat or intimidation . . . This objective element ensures that inmates cannot easily circumvent the exhaustion requirement, and provides district courts with a means of quickly filtering out frivolous claims." Id.

This Court is persuaded that the reasoning in Tuckel is sound. While Handy did not file a grievance with respect to his medical treatment and the related failure to relocate him, Handy's uncontroverted allegations are sufficient to convince this Court that his failure resulted from threats that he would be denied parole at an imminent hearing if he invoked the grievance process. The Court finds that the record supports the finding that these threats not only deterred Handy, but would have deterred a person of ordinary firmness and fortitude from filing a grievance. The Defendants are not, therefore, entitled to Summary Judgment on the ground that Handy failed to exhaust his administrative remedies; those remedies were effectively unavailable.

## THE EIGHTH AMENDMENT CLAIMS AGAINST DR. MOLLURA

This issue is evaluated under the Fed. R. Civ. P 12(b)(6) standard. In order to survive a motion to dismiss a section 1983 claim, a plaintiff must show that the defendant acted under color of state law, and that plaintiff was deprived of a federal constitutional right. Because there is no dispute that Mollura was a state actor, the Court's focus is on whether he infringed upon Handy's constitutional rights. To state a section 1983 Eighth Amendment claim against Mollura, Handy must allege facts sufficient to support a plausible inference that: (1) he had a serious

medical need; and (2) Mollura demonstrated deliberate indifference to that need. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a lay person would easily recognize the necessity of a doctor's attention." Monmouth Cnty Corr. Inst. Inmates v. Lozano, 834 F.2d 326, 347 (3d Cir. 1997) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981). Deliberate indifference is determined subjectively, meaning that a prison official is deemed to have been deliberately indifferent only if he actually knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). What the official should have known is irrelevant. Negligence, while it may support a state medical malpractice claim, does not rise to the level of deliberate indifference under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). With this standard in mind, the Court turns to Handy's allegations pertaining to Mollura.

In the middle of June 2011, allegedly in retaliation for having filed multiple grievances "about various issues in the jail," Hardy was moved from D Block to the dormitory area of the jail where he suffered negative medical consequences. [ECF 1-1 at 2]. He asked to be moved, but block officers told him that alternate placement could be made only upon the authority of the person who had assigned him to the dormitory in the first place, Varner. [Id.]. Handy states that was told the same thing by Mollura, the "doctor who was on staff and treating [him] for [his] chronic conditions." [Id. at 3]. Handy told the medical staff that medical policy supersedes all other policies in the jail, but was repeatedly told by the medical staff that they lacked authority to move him. [Id.].

11

Handy alleges that shortly thereafter, he was told by his block officer that he was going to be written up for harassing staff by filing excessive slips requesting relocation, and that this disciplinary action would negatively affect his upcoming consideration for parole. [Id. at 3]. Handy claims that he had already decided to abandon his attempt to be moved because he independently realized that his repeated requests could be viewed negatively during the parole process. Consequently, he let the issue drop. Handy does not deny that during the period where he no longer sought a move, he continued to visit *and was treated by Mollura with a wide variety of strong medicines*. [Id.]. Handy's parole request was denied in August 2010, about two months after he was moved to the dormitory.

Handy contends that when he was denied parole, he told Dr. Mollura "[that he] was really going to start acting up!!" [Id.]. He told Mollura that he would not return to the dormitory, would check himself into administrative custody, would not take his medicine, and would contact the state police and the prison superintendent until he was moved. Mollura consulted with the hospital administration. Handy writes: "They must have told him some instructions on what to do! He told me then that he would have me moved." [Id. at 4].

Handy was moved the next morning, and after that point, "the medications [started] to work better." [Id.]. According to Handy, he still suffers medical problems even after the move, because his problems were never properly treated or taken care of. He continues to take the range of medicines that he took before, but they have minimal effect. As to his medical treatment, Handy alleges that it will affect the rest of his life. [ECF No. 1-1 at 2]. In the Request for Relief section of his Complaint, Hardy refers to "Medical Negligence Issues of the Medical Staff" and asks that the Court issue an Order directing that the Jail provide "Correct and Proper Medical Treatment that came from these acts and non actions [sic] in this Medical Emergency!!"

While the Court finds that Handy has alleged facts sufficient to support a plausible claim that he suffered from a serious medical condition, it also finds that the allegations made against Mollura are insufficient to sustain a claim of deliberate indifference. Nowhere in the Complaint does Plaintiff allege facts that would permit a reasonable juror to find that Mollura acted with a subjectively culpable state of mind in his choice or delivery of medical care. Hardy admits that he was treated by Mollura with a wide variety of medications, that these medications were adjusted when Hardy's conditions failed to improve, and that, at some point, the medications provided some relief. He does not argue that there was a delay in treatment.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Rex v. Lehigh Cnty. Prison, No. 12- 4299, 2013 WL 1224912 at * 1 (3d Cir. March 27, 2013) (quoting United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n. 2 (3d Cir.1979)) (internal quotation marks omitted). Thus, even if Mollura knew that the dormitory lacked ventilation and contained allergens, there is nothing in the Complaint to suggest that he subjectively believed that the medical care he rendered was insufficient to overcome these conditions, and that in failing to render different care, he intended to punish Handy or expose him to a significant risk of harm. In fact, Handy's allegations provide grounds to support the conclusion that Mollura did not subjectively know that the course of medical treatment given created an excessive risk to Handy's health or safety.

First, Handy admits that he ceased complaining about the conditions in the dormitory for a period of time. Second, Mollura treated Handy aggressively, and saw him often. Next, even if Mollura knew that the dormitory conditions were exacerbating Handy's problems, there is

13

nothing in Handy's complaint to show that Mollura knew that those conditions posed an excessive risk to Handy's health. Finally, Handy's complaint suggests that Mollura may not have had the authority, or was unaware that he had authority to have Handy moved. He, in fact, told Handy that he did not have that authority. As soon as Handy, following denial of parole, began to complain vociferously to Mollura about being returned to the dormitory, Mollura acted immediately. He "wanted to talk to [Handy] and examine [him] better," and to send him for outside consultation [Id.]. "[H]e want[ed] to help." [Id.]. Mollura did, in fact, increase Handy's medicines, and consulted with the hospital administration. Handy writes: "They must have told him some instructions on what to do! He told me then that he would have me moved." [Id. at 4]. This last statement indicates that before this consultation, Mollura did not know that he could authorize Handy's move, or did not know how to go about having it done.

## **CONCLUSION**

Based on Handy's Complaint, the Court finds that Handy has failed to state an Eighth Amendment claim sufficient to withstand Mollura's Motion to Dismiss. That Motion will, therefore, be granted without prejudice to Handy's right to amend his Complaint to correct the deficiencies in his constitutional claims if he is able to do so. For the reasons set out in the Court's discussion of the exhaustion issue, the Motion for Summary Judgment filed by the remaining Defendants will be denied. An appropriate Order follows.

April 12, 2013

By the Court,

*Cynthia R. Eddy*
Cynthia Reed Eddy

cc:  Counsel of Record via CM-ECF